UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.  06-132 (EGS) |
| | : | |
| v. | : | |
| | : | |
| MARCUS MANOR | : | |

**GOVERNMENT'S MOTION FOR GUIDELINES CREDIT AND
MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves the Court, pursuant to § 3E1.1(b)(2) of the Sentencing Guidelines, to adjust the defendant's offense level down one level reflecting the defendant's early plea of guilty in this matter, which permitted the government to avoid preparing for trial and permitted the court to allocate its resources efficiently.  The United States also submits this memorandum in aid of sentencing.  For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant to 87 months for the offense of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year and 50 months for the offense of Assault with a Dangerous Weapon, to be served consecutively.

**I.     BACKGROUND**

On November 2, 2006, the defendant pled guilty to a two count Superceding Information that charged him with Unlawful Possession of a Firearm by a Convicted Felon, in violation of 18 United States Code § 922(g)(1), and Assault with a Dangerous Weapon, in violation of 22 District of Columbia Code § 402.  In entering this plea of guilty, the defendant admitted to the following:

On or about July 17, 2005, at approximately 7:05 p.m., inside 3072 Stanton Road, S.E., Apartment 1A, in Washington, D.C., the defendant, Marcus Manor, pointed a loaded Rossi 38

caliber revolver at Lucretia Pressey, his cousin, while the two were arguing. After Ms. Pressey left the apartment, the defendant followed her outside of 3072 Stanton Road, S.E., and fired the Rossi 38 caliber revolver in an effort to scare Ms. Pressey.

Members of the Metropolitan Police Department responded to 3072 Stanton Road, S.E., Apartment 1A in response to the shooting. Upon arriving at the scene, they were given permission to search the apartment by relatives of the defendant. In the master bathroom officers located the Rossi 38 caliber revolver that the defendant fired moments earlier. The Rossi 38 caliber revolver was loaded with 4 bullets and one empty shell casing, and had a serial number of D-323777.

The defendant knowingly and intentionally possessed the Rossi 38 caliber revolver with serial number D-323777 and the 4 bullets. The Rossi 38 caliber revolver with serial number D-323777 and the 4 bullets traveled from another state into the District Columbia on or before June July 17, 2005. The Rossi 38 caliber revolver was not registered in the District of Columbia, and the defendant did not have a license to carry a firearm in the District of Columbia.

At the time of these offenses on July 17, 2005, the defendant had the following criminal convictions: distribution of cocaine (D.C. Superior Court Case F-5745-01), assault (D.C. Superior Court Case M-13090-00), Bail Act Violation, (D.C. Superior Court Case M-8837-00), possession of an unregistered firearm (D.C. Superior Court Case M14365-99), possession of cocaine (D.C. Superior Court Case M4701-96), and unlawful use of a motor vehicle (Prince George's County, Maryland).

II. <u>SENTENCING CALCULATION</u>

    A    <u>Statutory Minimums and Maximums</u>

Pursuant to 18 United States Code §922 and § 924, the offense of Unlawful Possession of

a Firearm by a Convicted Felon carries a maximum sentence of 10 years imprisonment, a $250,000 fine and up to three years of supervised release.

Pursuant to 22 District of Columbia Code § 402, the offense of Assault with a Dangerous Weapon carries a maximum sentence of 10 years imprisonment and up to three years supervised release.

### B.   Federal Sentencing Guideline Calculation

The Guidelines calculations utilized in the Presentence Report ("PSR") calculates the defendant's total offense level at 31. See PSR ¶ 27. This offense level takes into account a three level adjustment for acceptance of responsibility. The PSR calculates the defendant's criminal history as Category VI. See PSR ¶ 39. Therefore, the guideline range for the defendant is calculated at 77 to 96 months. See PSR ¶ 98.

### C.   District of Columbia Sentencing Guideline Calculation

The PSR writer also consulted the District of Columbia voluntary sentencing guidelines for count two of the Information: Assault with a Dangerous Weapon. The defendant's guideline range for this offense is 30 to 72 months. See PSR ¶ 100.

## III.   GOVERNMENT'S RECOMMENDATIONS

### A.   Acceptance of Responsibility

The government agrees that the defendant's base offense level should be decreased by three points pursuant to Section 3E1.1 of the Sentencing Guidelines. He entered a guilty plea early enough in the proceedings to avoid the government's having to prepare for trial, and he appears to have met the requirements of Section 3E1.1 with respect to cooperating in the pre-sentence investigation. Accordingly, the government is moving the Court to grant the additional one level decrease in base

offense level provided for in that Guideline provision.

    B.    <u>Application of the Federal Guidelines post-Booker</u>

Pursuant to the plea agreement between the government and the defendant, it is the government's position that the Court should impose a sentence within the guidelines range. In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). <u>Booker</u>, 125 S. Ct. at 756. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. <u>See</u> 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." <u>Id.</u> at 769.

In <u>Booker</u>'s wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. <u>See</u> Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."

Booker, 125 S. Ct. at 767 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in 18 U.S.C. Section 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy

Statements 16-17 (1987); see also 28 U.S.C. Section 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). Moreover, since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766; see id. at 767 (Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court. Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 759 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity."). Since the Guidelines currently represent the only extant

benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals.

Booker, to be sure, departs from the prior practice of automatic reversal that would have accompanied the failure to sentence a defendant within the Guidelines. Such a sentence will now be reviewed instead for its "reasonableness." See Booker, 125 S. Ct. at 764. Nevertheless, the Guidelines -- resulting as they do from years of study of sentencing practices, crime statistics, national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C. Section 3553(a) – provide the most concrete yardstick against which to measure what would be unreasonable. Booker not only prevents courts from substituting their individual judgment about the appropriateness of the Guidelines range without explaining with specificity their reasoning, Booker also continues to subject the explanation of the decision to sentence outside of the correctly calculated range to a court of appeals reasonableness review. See 18 U.S.C. Section 3553(c) (mandating consideration of the Guidelines); 18 U.S.C. Section 3553(c)(2) (mandating written explanations for imposing a sentence outside of the applicable Guideline range); 18 U.S.C. Section 3742(f)(1) (mandating court of appeals to set aside a sentence imposed as a result of an incorrect application of the Guidelines); 18 U.S.C. Section 3742(f)(2) (mandating court of appeals to set aside a sentence outside the Guidelines range when the district court fails to provide a required statement of reasons in the judgment and commitment order).

Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances. This is so, said the court in United States v. Wilson, 350 F. Supp. 2d 910 (D. Utah, 2005) – the day after Booker was decided – because the Guidelines

represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference. Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 912. A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the Federal Guidelines range calculated in the Presentence Report for Count One.

        C.        <u>Application of the District of Columbia Superior Court Sentencing Guidelines</u>

In December 2003, the District of Columbia Advisory Commission on Sentencing recommended that sentencing guidelines be introduced in D.C. Superior Court. Such guidelines were promulgated and instituted in June 2004. The D.C. Superior Court Guidelines are, and always have been, voluntary. However, for the reasons discussed in section B above, the government

respectfully recommends that the Court sentence the defendant within the D.C. Guidelines range as calculated in the Presentence Report for Count Two.

      D.      <u>Basis for Government's Sentencing Recommendation</u>

The defendant's criminal history supports the government's request for a significant period of incarceration in this case. At only twenty-nine years of age, the defendant is a young man. Yet despite his young age, the defendant has already accumulated an extensive criminal record. In the past ten years, the defendant has racked up seven criminal convictions. Of those seven convictions, the defendant's probation was revoked in two instances. <u>See</u> PSR ¶¶ 29, 30. Nor were the instant offenses the defendant's first firearms offenses. In fact, the defendant has not one, but two prior convictions involving firearms. He has a 1990 conviction for possession of an unregistered firearm, and a 2000 conviction for simple assault. According to the PSR, the defendant pointed a firearm at the victim in that matter. <u>See</u> PSR ¶ 32. And in 1999 the defendant threatened to shoot two men as he stole their car. <u>See</u> PRS ¶ 30. Furthermore, at the time of the instant offenses the defendant was on probation in case 2001FEL5745 (Distribution of Cocaine), and he committed the instant offenses less than two years after his release from custody in that matter. His adjustment to probation in case 2001FEL5745 was poor prior to his commission of the instant offenses, as he was testing positive for drugs. <u>See</u> PSR ¶ 34. And rounding out the defendant's extensive criminal conduct is the fact that he has a pending case in Fairfax County for selling a controlled substance. <u>See</u> PSR ¶ 41.

The defendant's criminal history makes it very clear that he is a danger to others, and that his behavior is getting progressively more violent. In the instant case the defendant fired a gun on a public street in the District of Columbia at 7:00 p.m. on a summer evening. Even if the Court

believes defendant's claim that he wasn't pointing the gun at his cousin, and that he fired the gun to scare the victim, and not to harm her, the fact is that his reckless behavior could have had devastating consequences, not just for the defendant's cousin, but for any number of innocent civilians who were outside or even in their homes when the defendant shot the gun. Stanton Road is a heavily populated street, and the apartments across the street/across the parking lot from the area in which the defendant fired the gun are occupied by tenants, including children.

### IV.     CONCLUSION

Wherefore, the government respectfully requests that the Court sentence the defendant to 87 months for the offense of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year and 50 months for the offense of Assault with a Dangerous Weapon. The government requests that these sentences be served consecutively, and be followed by an extensive period of supervised release.

> Respectfully submitted,
>
> JEFFREY A. TAYLOR
> United States Attorney
> Bar No. 451058
>
> _____
> Catherine K. Connelly
> Assistant United States Attorney
> Mass. Bar No. 649430
> 555 4th Street, N.W. #4844
> Washington, DC 20001

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, David Bos, this 16th day of January, 2007.

                                                                                                                       _____
                                                                                                                       Catherine Connelly
                                                                                                                       Assistant United States Attorney